Good morning, your honors. Christopher Oaks on behalf of Appellant Glenn Fahlstrom. Your name, sir, again? Christopher Oaks, O-A-K-E-S, on behalf of Appellant Glenn Fahlstrom. May it please the court. Before this court, as an appeal of the trial court's decision denying a motion to compel arbitration of the dispute between Mr. Fahlstrom and Mr. Jones, two controlling members of an Illinois limited liability company, the dispute, as the court knows, is over the validity of an LLC membership assignment in which Mr. Fahlstrom sold his interest to Mr. Jones. And whether that dispute, the validity of that agreement, falls within the scope of the arbitration clause that's contained in the LLC operating agreement that the parties signed when this LLC was originally formed some almost six years ago. So there's really two narrow issues before this court. Is there an arbitration agreement between the parties? And secondly, is that arbitration agreement an agreement that governs this dispute? The answer to both questions is yes. Your honor, the standard of review that the appellant is advocating is a de novo standard, because the trial court did not make any factual findings with regard to the So the question before this court is whether the trial court's decision was based purely on a legal analysis from the undisputed facts. If the court reaches that conclusion, then the de novo standard, as advocated by the appellant, should be applied. However, if the court determines that the trial court made any factual findings, then an abuse of discretion standard is the applicable standard. So there is two different standards to apply. I would submit to the court that it is de novo for the very reason that there were no factual findings by the court. And the record supports that. And there are several brief points, if I may make, on the standard. First, Mr. Falstrom's motion to compel was based solely on the operating agreement's arbitration clause and his claim that the party's dispute over the validity of the membership assignment was arbitrable. In response to this motion to compel, Mr. Jones did not raise any disputed facts or argue that resolution of disputed facts was necessary to determine the matter. Finally, the trial court did not hold an evidentiary hearing on the motion to compel. And whether the dispute was arbitrable did not rest on any factual inquiry or disputed question of fact. So I would submit to the court that the standard here is de novo, and it is not even a close call. The first issue raised by Mr. Jones as to why this matter is not arbitrable is that there is no arbitration agreement between the parties. Mr. Jones is distinguishing between the operating agreement's arbitration clause and the membership assignment. And the membership assignment admittedly does not contain any arbitration clause. It's a few sentences long. It basically says that Mr. Jones did not raise any disputed facts or argue that resolution of dispute over the validity of the membership assignment was necessary to determine the matter. And the second issue raised is why Mr. Jones is not arbitrary in the case of the motion to compel. It's a few sentences long. It basically says that Mr. Jones does not raise any disputed facts or argue that resolution of dispute over the membership assignment does not contain any arbitration clause. And the third issue raises any dispute that arises under that agreement. Here the arbitration clause covers disputes arising under a subsequent agreement, that is, the membership assignment, because the original agreement, that is, the operating agreement, and the second agreement, the membership assignment, concern the same subject matter. As the Court knows, the operating agreement governs the The operating agreement contains very specific provisions regarding how the parties purchase and sell their interests to each other in the event of dispute. So we have a very, I'm sorry. Section 7.9 of the operating agreement is very broad, isn't it? It's extremely broad. And I would imagine you would be telling us that the validity of the membership agreement certainly falls within the purview under 7.9. Am I correct? Well, you're correct, Your Honor. There's no dispute here between the parties that there's a valid and enforceable LLC agreement. They signed it. No one's disputing it doesn't exist. No one's disputing that this agreement is not a binding agreement between the parties. What Mr. Jones is arguing is, despite the fact that we have an operating agreement that is not in dispute, and we have very broad terms of a dispute resolution provision in an operating agreement, it doesn't apply to the membership assignment, because the membership assignment is a separate, unrelated contract. And I would submit that the law is very clear otherwise. The Nagel decision, the A.E. Stanley decision, both cited by appellant in our briefs, state that when the subject matter of the dispute is precisely the type of arbitration dispute contemplated by the party's underlying agreement, later agreements between the parties need to be arbitrated under that arbitration clause. So I would submit that there aren't two separate agreements for purposes of determining whether there's an arbitration clause. There's an arbitration clause and an agreement. There's a later agreement. The parties contractually agreed. Is this all the same subject matter? Well, it is, Your Honor. The membership assignment specifically relates to a purchase and sale of an LLC membership interest. The operating agreement itself specifically contemplates, I believe in Section 3.5, that in the event of a dispute between the parties, there's a specific mechanism and provision for the purchase and sale of membership interest. So therefore, when the parties entered into this membership assignment, they were doing so subject to the terms and conditions of the operating agreement. Mr. Falstrom has alleged in his complaint that one of the reasons why the membership assignment is invalid and unenforceable is the parties failed to follow the strict provisions of the operating agreement, which binds their contractual relationship and how they previously agreed they purchase and sell interest. So I would say that they are so intertwined that they cannot be separated for purposes of enforcing the arbitration provision. So back to the original question. You're strongly advocating that these two things need to be read together. Correct. Absolutely, Your Honor. As I indicated before, it's hard to contemplate how the membership assignment can't relate to the operating agreement. I think there's ample case law that we've cited to suggest that the two are so substantially related, they have to be read together, that the arbitration clause in the operating agreement does apply to the dispute over the enforceability and validity of the membership assignment. The second important issue before this... Counselor, what is Mr. Falstrom's basic... Well, he complains about a couple of things, but as far as you're concerned, the basic dispute in this case is whether the membership interest that he's... the membership interest could be waived in the manner that the... that agreement that they signed actually purported to do. And that's your basic complaint, that that was invalid because under the operating agreement, as well as the membership... under the operating agreement, the membership interest could not be waived in the manner that it was originally intended to be waived in that way. Is that your... that's your biggest complaint? That's the biggest complaint. Specifically in the complaint itself, Mr. Falstrom claims the membership assignment is invalid for several reasons, one of which was the consideration was grossly inadequate. That too, but... that the agreement itself... But before you even get to the consideration, you're basically saying it couldn't be waived in this way to begin with. Correct. That it was done incorrectly, that it violated the operating agreement, and that this was not an effective assignment based on the way the operating agreement requires that transfers between the parties be... be done. So yes, that is correct. So what Mr. Falstrom is arguing is invalidity and unenforceability of a contract. He's not arguing the contract doesn't exist. Now, Mr. Jones spends considerable time in his I would submit to the Court it's a red herring argument because Mr. Falstrom has never framed the dispute as a dispute over whether the membership assignment exists. In other words, he's never argued in his complaint that the elements of contract formation are not present. And therefore, we never get to this issue of contract existence because it hasn't been framed by Mr. Falstrom in that way. And the case law is very clear that when the Court is looking to determine whether the dispute is arbitrable, it doesn't look to the merits of the case. It looks to the claim as framed by the party seeking arbitration and then determines is this claim an arbitrable claim. Case law is very clear that contract validity and enforceability are arbitrable disputes. That's not a gateway decision for the Court to determine initially. The gateway issue for the Court to determine is is there an enforceable arbitration agreement. And it's also a gateway issue to determine is there an agreement that exists. But here we don't have that second issue because nowhere does Mr. Falstrom deny the membership assignment doesn't exist. Certainly Mr. Jones claims it exists. He wants to enforce it. He wants to say it's a valid contract. Both parties signed it. The consideration passed from the purchaser to the seller. We have a valid agreement. So no party has argued there's an issue as to contract formation. Secondly, Mr. Falstrom has argued as one of the reasons for the membership assignment being invalid that there was a failure of consideration, not a lack of consideration, another important issue that this Court should take into consideration. Because as the Court knows, there's a major distinction between lack of consideration, which goes to contract formation, and failure of consideration, which causes a validly formed contract to become unenforceable. It's very clear in the complaint Mr. Falstrom alleged that there was a failure of consideration as to his release of his claims against the LLC. Mr. Jones continually continuously argues that this is a lack of consideration case. It hasn't been framed that way. And Mr. Jones tries to convince this Court, as he tried to convince the trial court, that this dispute is about contract existence. It's not. It's about contract validity and enforceability. There's ample authority to support the fact that claims attacking contract validity and enforceability are arbitrable decisions. There's an Illinois Supreme Court decision, Jensen, 2004, in which the plaintiff attacked the validity of a contract and argued that the contract should be rescinded and claimed that that was a trial court decision. The Supreme Court said no, that attack on the validity of the contract and the attempt to rescind it was itself an arbitrable claim. Again, the Deerson decision similarly argued that a rescission claim based on an allegation of fraud was to be decided by the arbitrator, not the court, not a gateway decision, because it's not attacking contract existence. Finally, the First District case in Colasso from 2006 found that the preliminary question in the case, the validity of certain employment contracts in that case, was not a challenge to the existence of the arbitration agreement. Therefore, that very argument as to the enforceability and validity of the employment agreements was not for the courts to decide. It was for the arbitrator to decide. Those, I believe, are the two main issues that the court here needs to resolve in favor of Mr. Falstrom to determine that this issue should be sent to arbitration rather than to trial. In conclusion, I would tell the court, as the court knows, there's a strong public policy in enforcing the primary purpose of arbitration agreements. That's to enable the determination of their differences without the strict conformance of having to go to a trial and enforcing the contracts the parties entered into. Mr. Falstrom simply asking if this public policy be advanced and he be given the opportunity to arbitrate the dispute with Mr. Jones based on what the parties originally contracted to almost six years ago. I believe that the Barr decision by the Illinois Supreme Court indicates that the paramount factor in determining the party's intention is the scope of the arbitration clause in the contract. And as I indicated before, the scope in this case is extremely broad. It's almost as generic as it can get. Any dispute between the parties. It doesn't even say any dispute under the operating agreements. It says any dispute among the members and any, I'm paraphrasing, any dispute between the company and any one or more of its members. I would suggest that any dispute, even tangentially related to the operating agreement, would need to be arbitrated. And here we have a dispute that is at the core of the very nature of the relationship between the members, how they transfer and sell their interest between the two. Finally, any doubts should be resolved in favor of arbitration, even when the parties themselves dispute the scope of the arbitration agreement. And so the presumption here is that the arbitration agreement should be enforced. Any doubts should be ruled in favor of Mr. Falstrom. And the appellant respectfully requests that this court remand the matter to the trial court in order that the trial court send this matter to arbitration. Thank you, counsel. Good morning. My name is Joseph Morrison and I represent the defendant Lawrence Jones. The issue in this case is not a challenge to a valid existing agreement. The issue in this case is whether there ever was consideration and therefore whether or not this agreement is even in existence. That's the issue. Well, that's what you say the issue is, counsel. Your opponent says that there is no dispute, that there is not a question of a lack of consideration, but rather a question of inadequate consideration, which is a completely different thing. What do you say to that? Well, I would respectfully disagree with my, with Mr. Holmes. I think you have to look at the complaint. The complaint says that the consideration was so grossly inadequate as to shock the conscience of the court. The agreement in its totality is unconscionable. And he phrases it as a failure of consideration. But what we're really talking about here is whether there was any consideration at all. He is in essence saying that there is no consideration because it is so grossly inadequate. Just a moment, counsel. He just stood here a few minutes ago and said very clearly that that is not what he's saying. He said we are not saying that there is no consideration. We are saying that the consideration was grossly inadequate. That's what he just said. And I'm sure it's recorded on the recording device with which you're both speaking. And I wrote it down. So that's a very different thing. So I'm just asking you to make a distinction for me because they are two different things. Well, I, let me try to back up and see if I can answer your question. In order to have a contract, you need offer, acceptance, and consideration. Mr. Oaks just told you that there were no issues as to contract formation. But I suggest that consideration is an issue of contract formation. It is the very basic element for the very existence of a contract. If there is no consideration, then there is no contract. Assume for the moment, Mr. Morrison, that we agree with Mr. Oaks that there is consideration, but it's, it's inadequate. Can you then make your argument for me with that assumption? Well, I guess the issue is whether or not an arbitrator should decide whether there is a failure of consideration. Which brings me to my next question, Mr. Morrison. Thank you. Section 7.9 of the agreement says Any dispute among the members and any dispute between the company and any one of its members shall first be submitted to mediation before a mediator reasonably acceptable to all parties. And it goes on and on. I circled any in three different places. Would this be any, would this be a dispute that would fall within the generic category of any? I would suggest that the answer is no. Why not? I would suggest that what the parties did in the membership assignment in April of 2009 was waive the provisions of this agreement. This agreement contains specific provisions as to, under certain circumstances, how one member of the LLC can buy out another member of the LLC. What we have to remember that in this case, there was this oral agreement to sell for $1,000. Mr. Jones goes home, he gets a check, he gets this membership assignment agreement, comes back hours later, Mr. Falstrom calls his attorney, okay, and then after talking with his attorney, he still signs the agreement. It's reduced to writing. It is? It says, Glenn Falstrom, in consideration for $1,000 and other good and valuable consideration, hereby sells and assigns, as of the date, blah, blah, blah, all of his membership interest in the Falstrom Restaurant Group. So you are contending that this agreement, which is a paragraph long that was signed on the 2nd of April, nullifies the agreement? I don't know that I would go that far. I'm not saying that this agreement nullifies the other agreement, but what I'm saying is that this agreement has been waived. They've waived the agreement. How, sir? Because they agreed to sell it outside the parameters of how the operating agreement suggests that one partner may purchase the interest of another. There's no dispute that the parties in this case chose, both sides chose not to do that. Waiver is an intelligent relinquishment of a known right. Okay, let me ask you another question that's related. It's what I asked him also. Do we have to read the two agreements together if there's a dispute as to what they mean? I don't believe so. I believe that we have to reach an issue even before that, because there's nothing to read together if the membership assignment is not valid. There's nothing to read together. Well, why isn't the membership assignment not valid? That's the dispute. We say that the membership assignment is valid, and therefore, there is nothing left to arbitrate. There's nothing left to arbitrate because Mr. Falstrom has sold his interest, conveyed all his interest in the LLC to Mr. Jones. If that agreement is valid, as the court said in Cody v. Harper, then there's nothing left to arbitrate. The whole dispute here arises out of the original agreement and whether or not the method that they chose to transfer the membership interest conforms to that agreement, whether there was adequate consideration, all of those things. Are those or are those not related to the company and the business of the company? I think that the answer to that is not really. Really? What are they related to? They're related to a standalone, separate agreement. This agreement either stands by itself or it doesn't. This agreement, which has been challenged for a total lack of consideration, that there was no consideration here to support this agreement, and therefore, this agreement is void. That's what he says. He doesn't say in his complaint, he doesn't say that the agreement is voidable. He says this agreement is void. In other words, at its inception, meaning there never was this agreement. So the court traditionally is the one that decides whether or not a contract exists. This is not asking for an arbitrator to interpret a dispute under these agreements. Let me ask one more question, then I'll stop hogging the questions, I promise. So according to your argument, we shouldn't be looking at 7.9 at all, because it has nothing to do with this dispute. Is that your position? Yes. Okay. Yes. And the case that I rely upon is the Cody v. Harper case. In Cody v. Harper, there was an employee of Harper that had an agreement, and then there was a subsequent confidentiality agreement entered into after she started employment. The issue in that case was whether this subsequent agreement, clearly related, I mean, you could argue in the broadest sense of terms, yeah, I mean, this is, I suppose, related to her employment. But the issue in that case was not an interpretation of that agreement. The issue in that case was whether this subsequent agreement itself was in fact valid. And the court in the first district held that the issue of the Well, again, they were claiming a failure of consideration. They were claiming a failure of consideration. They were claiming there was no consideration given for the subsequent agreement. The court held that under those circumstances, it is up for the court to determine the very existence of the contract. It is not up to the arbitrator to decide that. And this is in keeping with the facts of this case. The sole issue in this case is whether or not the parties entered into an agreement. That's the issue. The issue is whether they entered into the agreement. If they did enter into the agreement, then Mr. Foster has sold his interests to Mr. Jones. There's nothing left to arbitrate. On the other hand, if the court finds that the contract is not in existence, that that contract was void, it had no consideration, then again, there's nothing left for an arbitrator to interpret. There's nothing left. So in a case like this, where this is not a case of contract interpretation, this is not a case of a dispute under an existing agreement. This is a dispute about the very existence of the agreement. And under these circumstances, the agreement being this operating... Well, the agreement is the membership assignment. Right. As opposed to the operating agreement that was entered into to start with. Right. I mean, if this membership agreement is valid, then there's nothing to arbitrate, because he sold everything. If this membership agreement is not in existence, then the case is over too, because there's no dispute left to go to the arbitrator. Mr. Morrison, in view of your statement that here your argument is not directed against the arbitration clause, but rather directed towards the contract as a whole, are you familiar with the Deerson case? Yes. Well, in the Deerson case, under those similar facts, the court ordered arbitration. Well, holding specifically that because the arbitration clause was not being attacked, but rather the entire contract was being attacked, the matter became arbitratable and reversed accordingly. In Deerson, the issue was whether or not theories of fraud and other breaches of implied warranty of habitability and rescission was to be decided by the arbitrator or by the court. In that case, there was an existing agreement. Okay. There isn't a subsequent agreement. The court in Deerson simply held that issues of fraud and of rescission are attacks on the contract itself. It is a defense to the contract, and that therefore the arbitrator should decide those issues. Here, I would suggest that we have to get to a threshold question first. It's not a question of do you have a defense to a validly formed contract, but rather do you have a validly formed contract in the very beginning? And Deerson was decided by the second district 12 years before Cody v. Harper. So, again, I think that Cody v. Harper clearly says that the determination of a contract, the existence of a contract, is a question of law for the court to decide. I would just like to correct my one comment. In Deerson, the appellate court sustained the trial court in ordering arbitration. It was not a reverse. Correct. Mr. Dorsen, what do you say the standard of review is? Well, that's a, I guess it kind of isn't really clear. I'm asking you. I suggest that the standard of review is not de novo, but is rather an abuse of discretion. Why? I suggest that that's true because there were findings which were part of the record at the time this motion to compel arbitration was brought. Judge Palmer had conducted a very extensive six or eight days worth of a on a preliminary injunction, and it issued an order on that preliminary injunction. What was the subject matter of that hearing, though? The subject matter of that hearing was whether or not Mr. Falstrom could show some likelihood of success on the merits, and then have to meet the other issues for a preliminary injunction. Does that meet the criteria for de novo review that goes to the question of whether or not the operating agreement dictates a specific method of transferring of ownership which wasn't met? I mean, wouldn't that have to be the subject of the hearing for an abuse of discretion to be the standard? I don't know of any cases that have had this particular issue. Certainly, I agree with Mr. Oaks, and I agree with Your Honor, that there were no findings of fact made on this particular motion. I agree with that. The issue is whether or not the court, in deciding this, the court had the benefit of a previous hearing, and whether or not that should then make the scope of review an abuse of discretion rather than de novo. The other case that was mentioned in my briefs, but I'd like to highlight for the court, is Valeskovska v. Woodfield, Nissan, Inc., 358 Illinois Pellet, 3rd, 20, 830 Northeastern 2nd, 619 out of the 1st District, 2nd Division. In that case, the plaintiff was a buyer of an automobile, and then entered into a subsequent agreement pertaining to arbitration. In the first opinion, which is 351 Illap, 3rd, 742, 814 Northeastern 2nd, 887 in 2004, the court held that there was no consideration to support the plaintiff's promise to arbitrate. The Supreme Court vacated that judgment, sent it back to this court to consider that case in light of its decision in Jensen v. Quick. The court did that and still found that there was a failure of consideration, and therefore, the contract was not valid. Now, they decided the issue of contract validity. They did not send that back to the arbitrator, even though the Supreme Court had suggested that it might want to do so under the Quick decision. I suggested what we have here. I suggested what we have here is, is there an existing contract? If there is, then there is nothing left to arbitrate. Thank you. Thank you, counsel. Brief rebuttal, so emphasis on brief. Brief rebuttal. With regard to the standard, it's clear that the earlier preliminary injunction hearing was merely to determine whether the status quo should be maintained during the pendency of the litigation. The hearing did not concern Mr. Falstrom's merits of his claims. So you're answering the question that I asked. Certainly. I was about to ask you, but thank you for answering before I ask. The record's clear. The decision of the trial court is in the record. It didn't concern the merits of his claims. There were no issues as to arbitrability of his claims raised or decided by the trial court at the preliminary injunction hearing. So I think it's very clear that the standard here is de novo. When Mr. Morrison was arguing before the court, I'm sure the court heard him repeatedly use the words validity and existence interchangeably. They're very distinct terms. Attacking a contract that the parties agree exists and disputing its validity is very different than arguing that there was no agreement to begin with, that there's no contract, and that that's a gateway issue. The two are very different. The complaint in this case does not state no consideration. It doesn't state lack of consideration. It states failure of consideration. It states that the consideration was grossly inadequate. These are attacks on the validity and enforceability of a contract that the plaintiff has admittedly stated exists and the defendant most assuredly claims exists and should be enforced. My final point in rebuttal is that when Mr. Morrison stands before the court and says Mr. Falstrom waived any claims or protections that he had under the operating agreement, that underlying dispute, I would suggest to the court, is certainly arbitral. Because what Mr. Morrison is saying is Mr. Falstrom has no remedy. If he signs some agreement that purportedly as a matter of law caused him to waive all his claims, isn't that really a question of fact? Isn't that the very type of dispute that Mr. Falstrom bargained for when he signed that operating agreement years earlier? He doesn't have a remedy now to say I want the issue of whether I waived my claims. I want the issue of whether this membership assignment is or isn't valid. I want that arbitrated. Mr. Morrison is saying no, you don't have any rights. You waived your claims, you signed the agreement, you're done, you have absolutely no remedy whatsoever. I don't believe the law supports that and certainly the facts of this case don't support that decision either. I believe all of these disputes between the parties are arbitrable and this matter should be sent to arbitration. Thank you. Ms. Stokes, this is a housekeeping matter. On your brief you have your address but it doesn't say what town your office is in. 1051 Perimeter Drive, Suite 550, where? Oh, it's Schaumburg, I'm sorry. It doesn't say Schaumburg, Illinois? Hopefully on one of my briefs it says that. I apologize. For me to overlook that, that's somewhat remarkable. The computers have failed us once again. I signed the brief so it ultimately comes down to me. Thank you. Thank you both for a spirited argument. This matter will be taken under advisory.